VICKERS, DANIELS & YOUNG
ATTORNEYS AT LAW
50 PUBLIC SQ STE 2000
CLEVELAND OH 44113-2235

AREA CODE 216
623-0040

PATENT AND
TRADEMARK CAUSES

E-MAIL
VDY@SPRYNET.COM

FAX NO. (6111) 216 623 0407

November 27, 2000

Mr. Alan Kasdan,
President
Log House Foods, Inc.
700 Berkshire Lane North
Minneapolis, MN 5544-5403

    Subject:     Toll House Infringement
                      Log House Package
                      Our File: STN(104)/L01

Dear Mr. Kasdan:

    Recently, Nestle USA, Inc. brought to our attention a yellow package used by Log House Foods to sell chocolate chips in competition with TOLL HOUSE brand chocolate chips. As trademark counsel for Nestle's, we demand Log House discontinue using the phrase "Log House" for chocolate chips. Furthermore, the adoption of a Nestle type yellow package is a violation of 15 U.S.C. § 1125(a) and 15 U.S.C. § 1125(c).

    The phrase "Log House" for chocolate chips is a violation under 15 U.S.C. § 1114 of the famous trademark TOLL HOUSE, which trademark is the subject of several registrations by the United States Trademark Office, such as:

        Reg. No. 378,301
        Reg. No. 380,734
        Reg. No. 625,571
        Reg. No. 734,286
        Reg. No. 771,225

    Use of the phrase "Log House" for chocolate chips constitutes dilution of this famous mark protected by the Nestle registrations listed above.

    Your immediate action to halt these trademark violations is expected. As you know, under 15 U.S.C. §1117, Nestle is entitled to profits on sales. Consequently, your immediate

**EXHIBIT A**

discontinuation of infringing actions will be in your best interest. Unless such actions are taken by Log House, Nestle must institute appropriate legal action.

Very truly yours,

ROBERT V. VICKERS

RVV:is



LOG HOUSE FOODS, INC.
700 BERKSHIRE LANE    PLYMOUTH, MN 55441
(612) 546-8395
FAX (612) 546-7339

December 5, 2000

Mr. Robert Vickers
Vickers, Daniel & Young
50 Public Square Suite 2000
Cleveland, OH 44113

RE: Your File No. STN(104)/L01

Dear Mr. Vickers,

I am in receipt of your correspondence dated November 27, 2000. I am confused by both the timing and substance of your allegations. You assert that Log House Foods' use of "Log House" and "Nestle type yellow" ink on our baking chip packages violates Nestle trademarks. Even casual research into these areas would have demonstrated to you and your staff that there is no basis for any such claims.

Log House Foods is a third generation family-owned business. My grandfather started our company following his return from service in World War II. We adopted the Log House trademark immediately after beginning in the late 1940's. Images of the Log House trademark in use dating back to the late 1940's and early 1950's can be seen at our website. In fact, the Log House trademark and brand name has appeared on every category of items we have sold over the last fifty-plus years: from popcorn balls to candy to toast to coconut to candy coatings to baking chips.

The specific semi-sweet chocolate chip package that you refer to was developed and first marketed by my grandfather three decades ago. It has featured the same color scheme and brand identification since its inception. The package is sold throughout the country. Had the use of yellow packaging caused any consumer confusion I am sure that we would be aware of that by now. There has been no such confusion.

Most of this history is known to Nestle, although perhaps not to yourself or anyone with whom you are dealing. The Log House semi-sweet package was in existence prior to the time that Nestle brought an action to oppose Log House's CANDIQUIK® trademark registration. During that process, in 1977-78, it appears that Nestle reviewed our complete baking line. No one at Nestle or the D.C. firm representing it believed that this chip package was actionable at that time. I am confident that this same package is still not the basis for a trademark infringement or unfair competition claim.



This background and any additional information your staff learns while verifying this information should immediately end this matter. Unless I hear differently from you I will assume that your file has been closed.

Very Truly Yours,

Josh Kasdan
President


Cc:     Alan Kasdan



EXHIBIT B-1



EXHIBIT B-2



EXHIBIT C

MAYER·BROWN

Mayer Brown LLP
1675 Broadway
New York, New York 10019-5820

Main Tel +1 212 506 2500
Main Fax +1 212 262 1910
www.mayerbrown.com

November 14, 2011

BY UPS

A. John P. Mancini
Direct Tel +1 212 506 2295
Direct Fax +1 212 849 5895
jmancini@mayerbrown.com

Mr. Josh Kasdan
President
Log House Foods, Inc.
700 Berkshire Lane North
Minneapolis, MN 55441-5403

Re: Infringement of Toll House Trade Dress and Trademarks

Dear Mr. Kasdan:

    This firm is counsel to Nestlé USA, Inc. (Nestlé).

    Nestlé's famous TOLL HOUSE trademarks, which are the subject of incontestable federal registrations (Reg. Nos. 378,301; 380,734; 625,571; 734,286; and 771,225), are used in connection with a wide variety of baking products, including Toll House Morsels (Semisweet Morsels, Milk Chocolate Morsels, Dark Chocolate Morsels, Mini Morsels, Chocolate Chunks, Peanut Butter and Milk Chocolate Morsels, Premier White Morsels, Butterscotch Morsels, and SWIRLED Morsels). All of these Toll House products are also marketed and sold in Nestlé's iconic yellow packages that unmistakably identify Nestlé Toll House as the source. Nestlé's trade dress rights in the distinctive design of its Toll House packages are as clear and as important as its rights in the NESTLÉ and TOLL HOUSE trademarks.

    For over 50 years, Nestlé has spent an enormous amount of time and money building the Toll House brand so that it is now one of America's most trusted and well-known brands. As the owner of such a famous brand, Nestlé must protect the valuable rights it holds in the Toll House brand and products, and is obligated to prevent others from using its trademarks or trade dress in a way that is likely to cause confusion, mislead, imply an endorsement or affiliation, or otherwise dilute the famous and distinctive qualities of the TOLL HOUSE trademark and related trade dress.

    It has come to Nestlé's attention that within the last two months, Log House Foods has begun to sell its semi-sweet chocolate chips in similar yellow packaging nationally, in thousands of Walmart stores that also sell Toll House semi-sweet morsels. Log House Foods' use of such remarkably similar packaging for sale of the same goods, to the same consumers, in the same stores, will inevitably cause consumer confusion and is clearly an attempt by Log House Foods to improperly trade on the hard-earned good will of the Toll House brand that has taken Nestlé more than half a century, at a cost of many millions of dollars, to develop. Nestlé simply cannot—and will not—allow such an obvious and egregious infringement of its rights.

Mayer Brown LLP operates in combination with other Mayer Brown entities with offices in Europe and Asia
and is associated with Tauil & Chequer Advogados, a Brazilian law partnership.

**EXHIBIT D**

## I. Nestlé's Trademark and Trade Dress Rights

It is well-settled that strong and well-known trademarks are entitled to a broad scope of protection against another's use of a similar mark. *See generally* 2 McCarthy on Trademarks and Unfair Competition § 11:74 (4th ed.) As noted above, the TOLL HOUSE brand has been well-known to consumers for over 50 years; its strength is beyond dispute.

"Trade dress refers to the image and overall appearance of a product" and "embodies the arrangement of identifying characteristics or decorations," including packaging, that distinguish the source of the product and promote its sale. *General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 414 (6th Cir. 2007); *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Trade dress is protectable where it is distinctive in the marketplace and primarily non-functional. *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 768, 73 U.S.P.Q.2d 156, 1571 (6th Cir. 2005).

Nestlé's trade dress in the iconic Toll House morsel packaging consists primarily of the following elements: a rectangular shape, with a horizontal layout; the yellow color of the package; the horizontal ribbon-like banner spanning the length of the package and displaying the product variety; the distinctive transparent cut-out in the shape of a morsel, revealing the morsels in the package; the display of the NESTLÉ trademark; and the white logo emblem containing the TOLL HOUSE trademark together with the image of an inviting, cottage-style home surrounded by trees, and any and all combinations of these separately distinctive elements. The Toll House packaging is inherently distinctive, such that "its intrinsic nature serves to identify" Toll House as the source of the morsels or dough contained therein. *See Two Pesos v. Taco Cabana, Inc.*, 505 U.S. 763, 776, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992). Each element of the Toll House packaging listed above is non-functional: neither a rectangular shape, yellow package, morsel-shaped cut out, horizontal banner, or display of the NESTLÉ and TOLLHOUSE trademarks is "essential to the use or purpose" of the general practice of selling morsels, nor would Nestlé's exclusive use of any of these elements put Log House at "a significant non-reputation-related disadvantage." *See Abercrombie & Fitch Stores v. American Eagle Outfitters*, 280 F.3d 619, 640 (6th Cir. 2002); *Clicks Billiards*, 251 F.3d at 1257.

## II. Log House Foods' Infringing Trademark And Trade Dress.

The strength of the Toll House trade dress was exactly what Log House sought to unfairly trade upon when it designed its previous morsel packaging – which a Log House executive even recently acknowledged was a "Nestlé knock-off." But the newer packaging is no better, and still infringes Nestlé's trademarks and trade dress.[1]

---

[1] In fact, an image of the old "Nestlé knock-off" packaging is still available on the Log House website, reflecting a blatant attempt to continue to misappropriate Nestlé's good will in the Toll House brand.

Courts consider the following factors relevant to the likelihood of confusion inquiry for trademark and trade dress infringement: (1) strength of the plaintiff's mark or design, (2) relatedness of the goods, (3) similarity of the mark or design, (4) evidence of actual confusion, (5) commonality or similarity of marketing channels used, (6) likely degree of purchaser care, (7) defendant's intent in selecting the mark or design, and (8) likely expansion of the product line. *See Frisch's Rest. Inc. v. Shoney's Inc.*, 670 F.2d 642, 648 (6th Cir. 1982); *AMF v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir.1979). Nestlé can easily establish Log House's infringement under these tests.

The similarity between the TOLL HOUSE and LOG HOUSE marks on strikingly similar packaging of the same goods on the same shelves in the same stores make consumer confusion inevitable. The Log House brand and morsel packages are similar to Nestlé's Toll House brand and morsel packages in "sight, sound, and meaning," such that they create the "same commercial impression." *See generally* 4 McCarthy on Trademarks and Unfair Competition § 23:21 (4th ed.). The similarity in the sight of the marks and the accompanying package designs is remarkable: both TOLL HOUSE and LOG HOUSE appear in dark capital letters, contained in similarly-sized white logo emblems, along with nearly identical images of inviting cottage-style homes surrounded by trees. The similarity of the packages enhances the likelihood of confusion of the marks. Both packages are yellow and rectangular; display the similar white logo emblems described above; display horizontal banners spanning the length of the packages; and display in a central location on the banner, in white letters similarly outlined, the type of morsels contained in the package. Even the recipe on the back of the Log House package is essentially identical to the recipe on the back of the Toll House package. The similarity in sound is equally clear: TOLL HOUSE and LOG HOUSE each contain the word "house" preceded by a one-syllable word containing the letter "O." As is conveyed by the images of the nearly identical shaded houses surrounded by trees that accompany the brands' names on TOLL HOUSE and LOG HOUSE packages, the meaning conjured by the term "log house," in the context of morsels, is no different from that conjured by the term "toll house." Both invite consumers to imagine themselves enjoying baked goods with friends and family in a cozy, warm, comfortable environment.

### III. Log House Foods' Sale Of The Same Products In The Same Stores Makes Consumer Confusion Inevitable.

Log House Foods' recent sale of morsels in such yellow packaging *in the same stores, to the same customers*, is guaranteed to cause widespread confusion. *See* 4 McCarthy § 24:22 ("Where the goods or services are directly competitive, the degree of similarity of marks needed to cause likely confusion is less than in the case of dissimilar goods or services."); 4 McCarthy § 24:45 ("If both plaintiff's and defendant's goods are sold in the same stores, especially if available nearby each other within a store, this tends to increase the likelihood that buyers will think the goods come from the same source."). Consumers are not likely to distinguish between nearly identical looking packages sold in the same stores. This is especially true when purchasers are not likely to exercise great care in selecting the product, as is the case with baking

morsels. *See* 4 McCarthy § 23:95 ("When the products are relatively low-priced and subject to impulse buying, the risk of likelihood of confusion is increased because purchasers of such products are held to a lesser standard of purchasing care") (citation omitted).

In addition, in light of the fame of the Toll House brand and Log House's own acknowledgement of intentional infringement, Nestlé can only presume bad faith and willfulness by virtue of Log House's encroachment into Walmart, Nestlé's largest customer.

### IV. Nestlé's Available Remedies.

Based on the trademark and trade dress infringement discussed above, the remedies available to Nestlé are several, including injunctive relief against all combined use of the LOG HOUSE mark and infringing trade dress, and damages—including Log House's profits, plus the cost of the action. In addition, Nestlé would be entitled to recover treble damages, plus attorneys' fees, based on willful misconduct. 15 U.S.C. § 1117. Given the obvious and extensive similarities between the product packaging, and Log House's admittedly willful infringement, we expect a court will find willful misconduct here, thereby exposing Log House Foods to considerable liability to Nestlé.

Nestlé is committed to protecting its intellectual property rights and will seek any and all available remedies if forced to do so. However, Nestlé is willing to resolve this matter amicably in order to minimize the burden on both parties. To this end, Nestlé is willing to stand down from protecting its rights through litigation if Log House Foods agrees to: (1) immediately cease selling, displaying, and/or advertising Log House morsels in infringing packaging and (2) permanently desist from use, adoption or application of any name, logo, mark, or trade dress that contains any of Nestlé's trademarks, trade dress, and/or any similar variation thereof, alone or together.

Please confirm acceptance of these terms in writing *within ten days of receipt of this letter.* In the meantime, I am available to discuss these issues further with you by phone. Absent an appropriate response, Nestlé will be forced to take all necessary steps to protect its rights.

Nothing in this letter is intended to waive, modify, or limit any rights or claims that Nestlé may have, all of which are expressly reserved.

Sincerely,

A. John P. Mancini

cc: Nestlé USA, Inc.

# J. Christopher Cuneo

**From:** Mancini, A. John P. [JMancini@mayerbrown.com]
**Sent:** Thursday, December 01, 2011 5:19 PM
**To:** J. Christopher Cuneo
**Cc:** Josh Kasdan
**Subject:** RE: Nestle packaging design claim
**Attachments:** Document.pdf; Document.pdf; Document.pdf; photo.jpg

Chris,

There have been no notable design changes to Nestlé's Toll House packaging at any relevant time. Attached are examples of the Toll House packaging since 2004, which are consistent in all material respects to the Toll House packaging that has been used <u>for decades</u>.

As long as a Log House package that looks confusingly similar to the Toll House trade dress is in the market – whether on store shelves, on a web page, or elsewhere – it is a subject of great concern to Nestlé and must be a part of any discussion to resolve this matter. Per your request, I have also attached a photo of the Log House packaging with the solid yellow background that we recently located in a Walmarts store.

As I have explained and we have discussed, Log House's trade dress infringement is based on the overall similarity between the Log House packaging (for semi-sweet chocolate and butterscotch flavored morsels) and the Toll House baking morsels. That infringement has to stop, or we will be forced to stop it with judicial intervention. If, however, Log House is willing to change the use of the background color yellow and the morsel-shaped window into the package, I may be able to get Nestlé to agree to resolve this matter without the need for litigation. Please let me know at your earliest convenience if we will be able to move forward towards resolution on that basis.

Sincerely,

John

A. John P. Mancini
Partner
T 212 506 2295   F 212 849 5895

Mayer Brown LLP
1675 Broadway
New York, New York 10019-5820
jmancini@mayerbrown.com
web: www.ipcounsel.com

**From:** J. Christopher Cuneo [mailto:ccuneo@lindquist.com]
**Sent:** Thursday, December 01, 2011 3:11 PM
**To:** Mancini, A. John P.
**Cc:** Josh Kasdan
**Subject:** RE: Nestle packaging design claim

John,

It turns out that you are at least partially right. At some point during the last run of printing of semisweet chocolate chip packaging, a decision was made to remove the screen that creates the polka dot background. Consequently about 1/3 of the product shipped to Wal-Mart has the solid yellow background on the semisweet chocolate chip packaging and about 2/3 of the semisweet chocolate ship product shipped to Wal-Mart is in bags with the polka-dot background that

1

has been in use for several years.  As I understand it, the inventory of film for packaging employs the solid background so that is the background that should be the subject of discussion.  I don't believe that materially changes the analysis but wanted to up-date you on the results of the further investigation.

Even if someone at Log House had made the alleged statement about the image that appears on the Log House website (which appears to be disputed), it's a red herring.  From what I can tell from looking online at promotions of Nestle semisweet chocolate chip products, the packaging that appears in the link you provided contains relatively recent design changes.  Is that correct?

In any event, are we in agreement that the primary items about which Nestle is complaining are the use of a yellow package and the use of openings in which consumers can see the product?  I recognize that your letter includes things like use of a rectangular package but am trying to get a realistic sense for what Nestle truly asserts to be problematic.

Chris


**From:** Mancini, A. John P. [mailto:JMancini@mayerbrown.com]
**Sent:** Thursday, December 01, 2011 10:20 AM
**To:** J. Christopher Cuneo
**Subject:** RE: Nestle packaging design claim
**Importance:** High

Chris,

The image of packaging available via the link you provided earlier represents the current Nestlé Toll House morsel packaging, and the trade dress at issue in this matter.  The trade dress is also displayed prominently at http://www.verybestbaking.com/Toll-House/Products/MorselsAndBaking.aspx, and described in detail in my letter of November 14, 2011.

The image you sent -- which you represented to be the packaging that Log House has used for many years for its semisweet chocolate chips -- is <u>not the same as the Log House semi-sweet chocolate chips being sold in Walmart</u> -- which does not have any background design, <u>but instead is solid yellow</u>, and is also not the same as the image that is used on the Log house Foods website at http://www.loghousefoods.com/Products_bc.html.  Given that even Log House's senior executives have acknowledged the packaging displayed on the website as a "Nestlé knockoff," I am shocked to see that it continues to be displayed.

Accordingly, if there is any inconsistency here, it is with respect to Log House Foods' morsel packaging.  In any event, as I have explained, each of these currently-used iterations of the Log House packaging are confusingly similar to – and therefore infringe and dilute – the Toll House trade dress.

I would be glad to consider any materials you think relevant to this matter, but so far I have not received any.  I would welcome a further discussion, but absent some constructive proposals from Log House, Nestlé may be forced to take further action to protect its rights.

John

A. John P. Mancini
Partner
T 212 506 2395   F 212 849 5895

Mayer Brown LLP
1675 Broadway
New York, New York 10019 5820

2

jmancini@mayerbrown.com
web: www.ipcounsel.com

**From:** J. Christopher Cuneo [mailto:ccuneo@lindquist.com]
**Sent:** Wednesday, November 30, 2011 5:49 PM
**To:** Mancini, A. John P.
**Subject:** Nestle packaging design claim

John,

Are you sending a scan of the Nestle packaging that you claim to be the iconic trade dress being infringed by Log House? Further investigation suggests that Nestle has more than one style of packaging in the market right now. Therefore step one in any discussion about Nestlé's claims is understanding with certainty exactly what Nestle package design is alleging being infringed by Log House's continued use of the package design I sent you earlier.

Thanks. I should be around tomorrow if you want to talk after we each have in hand examples of the packaging at issue.

Chris



LINDQUIST VENNUM

J. Christopher Cuneo | Partner | 612.371.3919 | ccuneo@lindquist.com
Lindquist & Vennum PLLP | 4200 IDS Center, 80 S 8th Street, Minneapolis, MN 55402 | Fax: 612.371.3207

NOTICES
IRS Circular 230 Notice: To ensure compliance with requirements
imposed by the IRS, we inform you that, except to the extent
expressly provided to the contrary, any federal tax advice
contained in this communication (including any attachments) is
not intended or written to be used, and cannot be used, for the
purpose of (i) avoiding penalties under the Internal Revenue Code
or (ii) promoting, marketing or recommending to another party any
transaction or matter addressed herein.

This e-mail message and any files transmitted with it are
confidential and may be subject to attorney-client privilege or
work-product protection, and should not be read or distributed by
anyone other than an intended recipient. If you received this by
mistake, please notify us by replying to the message, and then
delete it.

IRS CIRCULAR 230 NOTICE. Any tax advice expressed above by Mayer Brown LLP was not intended or written to be used, and cannot be used, by any taxpayer to avoid U.S. federal tax penalties. If such advice was written or used to support the promotion or marketing of the matter addressed above, then each offeree should seek advice from an independent tax advisor.

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

```
NOTICES
IRS Circular 230 Notice: To ensure compliance with requirements
imposed by the IRS, we inform you that, except to the extent
expressly provided to the contrary, any federal tax advice
contained in this communication (including any attachments) is
not intended or written to be used, and cannot be used, for the
purpose of (i) avoiding penalties under the Internal Revenue Code
or (ii) promoting, marketing or recommending to another party any
transaction or matter addressed herein.


This e-mail message and any files transmitted with it are
confidential and may be subject to attorney-client privilege or
work-product protection, and should not be read or distributed by
anyone other than an intended recipient. If you received this by
mistake, please notify us by replying to the message, and then
delete it.
```